LAW OFFICES OF S. CHANDLER VISHER
S. Chandler Visher, State Bar No. 52957
44 Montgomery St., Suite 3830
Telephone (415) 901-0500
Facsimile (415) 901-0504
E-mail: chandler@visherlaw.com

Attorney for Plaintiffs
NADINE DUFFIN, TYRE DUFFIN and
CHILDREN'S LAW OFFICE



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

NADINE DUFFIN, parent of TYRE DUFFIN, a disabled child as defined by the Individuals with Disabilities Education Act, and CHILDREN'S LAW OFFICE by Carole Brill, attorney for Nadine and Tyre Duffin in a Due Process Proceeding as delineated by the Individuals with Disabilities Education Act,

    Plaintiffs,

v.

SAN FRANCISCO UNIFIED SCHOOL DISTRICT,

    Defendant.

No. C 04 4528 JCS

COMPLAINT FOR ATTORNEY FEES UNDER INDIVIDUALS WITH DISABILITIES ACT

    Comes now plaintiffs and complain against defendant for attorney fees under the Individuals with Disabilities Education Act (IDEA) as follows.

## INTRODUCTION

1. Invoking this Court's jurisdiction pursuant to 20 U.S.C. section 1415 and 28 U.S.C section 1331, this action is commenced to recover reasonable attorney's fees and expenses

incurred in connection with an administrative proceeding under the Individuals with Disabilities Education Act, 20 U.S.C. section1400, et seq. (hereinafter "IDEA"). As the prevailing party in the administrative proceeding, plaintiffs are entitled to reasonable attorney's fees and expenses, including expert witness and consultant fees.

## JURISDICTION

2. This action arises under the laws of the United States. Jurisdiction is conferred on this Court pursuant to 20 U.S.C. section 1415(i)(2)(A) and 28 U.S.C section1331. Venue is proper in this court under 28 U.S.C. section 1391(b).

## INTRADISTRICT ASSIGNMENT

3. Assignment to the San Francisco Division is proper pursuant to Civil Local Rule 3-2(c). The defendant resides within and all of the events which are the subject of the Complaint took place within the County of San Francisco.

## PARTIES

4. Plaintiff NADINE DUFFIN is the mother of Tyre Duffin, a minor child enrolled in the defendant school district who is a disabled child as defined by the IDEA. Plaintiff NADINE DUFFIN retained CAROLE BRILL, an active member of the State Bar of California and the Director of CHILDREN'S LAW OFFICE, to represent her and Tyre to obtain the benefits of the IDEA for Tyre.

5. Plaintiff TYRE DUFFIN is a twelve year old child with severe mobility, communication, health and learning disabilities who is enrolled in the defendant school district. Plaintiff TYRE DUFFIN and plaintiff NADINE DUFFIN are collectively referred to herein as "Plaintiffs."

6. Plaintiff CHILDREN'S LAW OFFICE is a non-profit, charitable corporation that provides otherwise unavailable free legal services for children in areas such as education, special education and disabilities, child abuse, neglect and molestation.

7. Defendant SAN FRANCISCO UNIFIED SCHOOL DISTRICT (SFUSD or District) is a publicly financed school district which, among other things, administers programs and provides benefits as required under the IDEA. Pursuant to the Constitution, the laws of

the State of California and the IDEA, defendant District has a duty to provide a free and appropriate public education (FAPE) to all children with disabilities within the meaning of the IDEA. Defendant District is the "local educational agency" within the meaning of the 20 U.S.C. section 1401(15).

## STATUTORY SCHEME UNDER THE IDEA

8. The IDEA was adopted in 1975 to ensure that children with disabilities received a public school education. In adopting the IDEA, Congress found that more than one-half of the children with disabilities did not receive appropriate educational services that would enable such children to have full equality of opportunity and that because of the lack of adequate services within the public school system, families were often forced to find services outside the public school system. (20 U.S.C. §1400(c). In 1997, Congress amended and re-authorized the IDEA. (20 U.S.C. 51400. et seq.) Congress found that "the implementations of this Act has been impeded by low expectations, and an insufficient focus on applying replicable research on proven methods of teaching and learning for children with disabilities." (20 U.S.C. §1400(c)(4)

9. Pursuant to 20 U.S.C. section 1415, any parent may present a complaint concerning the identification, evaluation, or educational placement of a child, or the provision of a free appropriate education to such child, and have the complaint resolved in an impartial due process hearing. As required by the IDEA, California has established an impartial due process hearing system administered by the California Special Education Hearing Office.

10. Under the IDEA annual individual educational programs, called IEPs, are designed for disabled students through an IEP meeting and its resulting IEP document, which among other things contains statements of the disabling conditions that qualify the student for special education, his current levels of performance, strengths and areas of need, annual goals and short-term objectives, as well as the program, placement, services, accommodations and other supports he will need to benefit from education.

## FACTS

11. Tyre Duffin is a child with severe mobility, communication and health needs as well as learning disabilities. He is dependent on a wheelchair, walker, personal assistance and other mobility equipment to move, and he is dependent on a *talker*, specialized computer equipment and/or other *high* and *low tech* modalities to communicate. In addition, he suffers from severe health problems including cerebral palsy, asthma, tracheal malasia, seizure disorder and esophageal dismobility. He uses a gastronomy tube and has a monitored feeding pump 20 hours a day. These disabilities have required frequent hospitalizations and that he be within close proximity to nursing assistance throughout his school day. Tyre has also been assessed as having specific learning disabilities which have made teaching him an additional challenge. Tyre is not cognitively impaired, has made academic progress at school and loves to learn.

12. Children's Law Office, by attorney Carole Brill, has represented Tyre at the request of his mother for several years. Children's Law Office has monitored Tyre's educational program as well as other services and has supported his needs in the areas of health and equipment. When Ms. Brill was first retained, Tyre was enrolled by SFUSD at the Bridge School, a private program for severely impaired children. Until the current matter was concluded by a Final Mediation Agreement on June 24, 2004, Tyre's last agreed upon IEP was signed on March 25, 2002, during the 2001-2002 school year when he was enrolled at the Bridge School as a third grade student.

13. Among other things, the March 25, 2002 IEP described his levels of performance, his grade as third grade, the equipment he then used, specifics of mainstream participation that were built into his program (that is, participation in *regular* education classes with the assistance of an aide for part of the day), transportation needs (with special considerations such as limiting time of travel to a maximum of one hour each way, limiting feeds before travel, and nursing assistance on the bus), nursing within line of sight throughout the day (including during transportation), and specifics such as the modality, amount of time and the number of times per week of needed occupational, physical and speech and language therapies.

14. For the 2002-2003 school year Tyre was moved to a public program and was enrolled at Francis Scott Key elementary school in 4th grade by SFUSD.

15. A series of IEPs were held in the spring of 2003 on April 8th, May 15th and May 27th. Ms. Duffin refused to sign the resulting IEP documents for a number of reasons. The District sought to decrease nursing; there were evident problems with Tyre being able to participate in mainstream classes; the District would not write specifics, such as the amount of time and times per week for needed occupational and physical therapies into the document; specifics such as nursing, travel time limits and harness for transportation were omitted from the document; needed equipment such as Tyre's talker was faulty, sometimes dangerous and/or unavailable; and the District would not include language mandating peer interaction with non disabled students as communication partners in the IEP. In addition, Ms. Duffin requested that parent training on Tyre's specialized equipment and that regularly scheduled meetings between her and key school staff to discuss problems and progress be written into the IEP. These requests were refused. Importantly, there was no assessment or agreement about Tyre's current levels of academic performance, how his disabilities affected his learning and how to address them, nor was there any agreement about Tyre's school placement for the upcoming 2003-2004 school year.

16. The school placement issue was resolved but many other issues remained as the 2003-2004 school year approached. On August 6, 2003 Ms. Brill filed a request for a Due Process Fair Hearing for Tyre with the Special Education Hearing Office citing broad problems involving Tyre's program, equipment, services and supports and referenced a second letter sent to the District the same day that set forth the specific problem areas and proposed solutions.

17. Pursuant to 20 U.S.C. 1415(j), except for the new agreed upon change of placement to Aptos, the effect of filing for Due Process was to freeze into place, that is, *stay put,* the program, equipment, services and supports for Tyre in the last agreed upon IEP (the one signed on March 25, 2002) during the pendency of the Due Process action.

18. There were nine items in dispute listed in Ms. Brill's letter to the District which accompanies the request for the Due Process Fair Hearing on August 6, 2003. They were:

1st.     **A New Talker.**  Tyre needed a new talker, in working order available all day, with appropriate "head mouse" and specially programmed.

2nd.    **Evaluations.**  Plaintiffs requested evaluation of Tyre's "levels of academic performance," "current speech and language" and "placement and equipment needs."

3rd.     **Equipment.**  Tyre needed his equipment requirements specified in the IEP so that it would be clear what equipment he had a right to have and how it would be serviced.  It also had to be clear that Tyre was to have the use of some of the equipment at home as well as school.

4th.     **Nursing.**  Plaintiffs did not want Tyre's level of nursing services decreased below having him in a nurse's line of sight at all times.

5th.     **Transportation.**  The IEP needed to be changed to include nursing transportation and special considerations.

6th.     **Supports for School Personnel.**  The IEP needed to clearly indicate that Tyre must be accompanied by staff trained in the use of his communication devices during mainstream activities.

7th.     **Designated Instructional Services.**  Plaintiffs wanted the IEP changed to specify that Tyre would receive occupational therapy two times a week for 45 minutes each, oral motor training once a week for 45 minutes and physical therapy two times a week for 45 minutes each.

8th.     **Training and On-Going Communication/Consultation for Nadine Duffin.**  Plaintiffs wanted training for her on the use of Tyre's equipment written into the IEP.  She also wanted at least monthly meetings with Tyre's SDC teacher, Speech and Language Therapist and Augmentative Communication Specialist.

        9th.      **Peer Interaction.** Plaintiffs wanted the IEP amended to include a clear requirement for Tyre to have regular peer interaction, including interaction with peer communication and mobility partners.

20. After receiving Ms. Brill's Request for a Due Process Fair Hearing, the Special Education Hearing Office in Sacramento assigned Mediator Elaine Talley to the action, *Tyre Duffin v. San Francisco Unified School District,* and assigned the request California Special Education Hearing Office Case Number *SN 03-1730*. The Special Education Hearing Office also responded to the filing by sending materials to the parties, as in all due process actions, encouraging them to meet in mediation, which they did. A first mediation session was scheduled for August 29, 2003.

21. Brill met with Ms. Duffin in preparation for the mediation and represented her at it. Unfortunately, the case was not resolved then, but the Mediator indicated that the parties would continue to mediate. The District made a proposal for a "Final Mediation Agreement" which was sent to Brill by fax on September 11, 2003. Although no overall agreement was then reached, the parties did agree on an Assessment Plan with the knowledge of and coordination of the Mediator.

22. Since no overall agreement had been reached in September, 2003, Ms. Brill wrote to the Mediator and SFUSD on October 8, 2003 summarizing the status of the negotiations and reconfirming agreement on the SFUSD assessment plan. This letter outlined various changes necessary in the District's proposed "Final Mediation Agreement" and noted that, at the next IEP, "Ms. Duffin will also request a duplicate set of Tyre's assistive learning equipment for his use at home" and "we will be presenting an independent evaluation of Tyre's current levels of performance by Dr. Kathleen Peters for which Ms. Duffin expects reimbursement by the District."

23. The District insisted that an IEP be scheduled subsequent to completion of their assessment plan. In fact, two IEP meetings were held, the first on December 18, 2003 and the second on January 9, 2004. At the meetings the parties also tried to resolve the many issues that had arisen in this case.

24. At the December 18 IEP meeting, among other things, Dr. Peter's independent assessment was accepted, reviewed and discussed. The District also sought to provide assurances, by averring that they now had a timing device affixed to his school bus, that Tyre's transportation was taking no longer than one hour each way to and from school. In addition, a duplicate set of assistive technology (a computer) was to be provided for Tyre to use at home, with its specialized programming and set up provided by his school staff. Training was also offered to Ms. Duffin in the equipment's use. Goals and objectives were agreed upon. The equipment issues were also resolved and explicitly written into the IEP document by agreement to purchase a new *talker*. Assurances were written into the IEP that needed equipment, now specifically listed in the IEP, would either be transported to and from home with Tyre daily, or, if that was not possible, that equipment he needed for school would be newly procured for him by the District to use there.

25. At the December 2003 and January 2004 IEP meetings a plan for equipment oversight was added to the IEP (what to do, for example, if something was not working) as were specifics about the support Tyre needed by staff trained in the use of his communication devices in order to attend mainstream classes. Regular meetings to be scheduled between key staff and Ms. Duffin were also written into the IEP document and regularly scheduled communication interaction for Tyre with more typically developing peers was also prescribed. Ms. Brill prepared for and met with Ms. Duffin before each of these IEP meetings.

26. Two new issues, however, arose during the course of these December and January IEP meetings. First, the District insisted that Tyre was actually in the 6th grade as opposed to the understanding, written into his earlier IEPs, that he was in the 5th grade and was to be taught 5th grade curriculum during the 2003-2004 school year. The second was that Ms. Duffin wanted Tyre to receive grades, at least in his mainstream classes. Prior to the December 2003 IEP meeting the District had not given Tyre grades in any classes.

27. After the January 2004 IEP, Ms. Duffin had not yet signed any of the IEP documents from 2003 and 2004, because of these remaining issues. Also, there were five sets of

different IEP documents, one from each of the five IEP meetings (4/8/03, 5/15/03, 5/27/03,12/18/03 and 1/9/04 ). They were voluminous, difficult to read and often conflicting in their contents from date to date.

28. After the January 2004 IEP, since there was agreement on many issues subject to the due process hearing, Ms. Brill proposed to SFUSD's counsel that they try to work out one master, or merged, IEP document which purged the inconsistencies and was an accurate description of the agreed upon specifics of Tyre's program, placement, services, equipment needs and other supports. If they were successful, she would present the master, or merged IEP document to Ms. Duffin for final review. Ms. Brill apprised the Mediator, Elaine Talley, that a master IEP might form the basis of a Final Mediation Agreement in the pending due process action.

29. The District's counsel and Tyre's teacher on behalf of SFUSD, and Ms. Brill, on behalf of Plaintiffs, met on March 7th and March 11th, 2004 to develop a master IEP. Ms. Brill prepared extensively for each session. The District agreed to insert the specifics of the amount of time and times per week for needed occupational and physical therapy and there was agreement on most items. After many hours of negotiation agreement on the master IEP was reached. The new, *master* IEP document, reflecting the five previous meetings, was introduced by the following preamble:

> "This merged document is the final IEP arrived at after a series of IEP meetings which were held on 4/8/03, 5/15/03, 5/27/03 (when Tyre was attending Francis Scott Key) and on 12/18/03 and 1/9/04 (when Tyre has been attending Aptos Middle School).
>
> Tyre is a complex child with multiple needs as reflected in the documentation and many reports which are attached to and incorporated in this IEP.
>
> Tyre's situation was marked by conflict and then subject to a due process/fair hearing which further prolonged finalization of his IEP. It is in the interest of resolving these problems that the District through counsel and Tyre

through counsel and his mother, have agreed to merge documents from these multiple IEP meetings to arrive, as much as possible, with a final IEP document. Continuing note pages from all the IEP meetings are attached for reference.

It is agreed that all of the goals (page 4) will run through January 2005. Their benchmark dates will coincide with grade reporting periods."

30. Ms. Brill took the merged IEP document to Ms. Duffin for consideration and review. Ms. Duffin signed the master IEP on April 23, 2004, but wrote two exceptions:

   1. *I disagree with the District's decision to change his (Tyre) grade level mid year (in 03-04) from explicitly 5th grade to 6th grade and*
   2. *I want Tyre to continue to receive grades on his report cards.*

31. Ms. Brill communicated this progress to Mediator Elaine Talley and proposed that a Final Mediation Agreement could now be developed if the grade level and grades issues could be resolved. After some delay caused by Tyre's hospitalization in the spring of 2004, a final agreement was negotiated.

32. The Final Mediation Agreement consists of five paragraphs and gives plaintiffs most of the relief requested in the August 6, 2003 Request for Due Process Hearing and the August 6, 2003 letter to the District, which specifically described the matters in dispute for the hearing, as well as the new issues raised during the pendency of the Due Process proceeding memorialized in Ms. Brill's October 8 2003 letter and also signified by Ms. Duffin's written exceptions to the master IEP document:

   In paragraph number 1 the parties memorialize the fact that they had created a merged, or master IEP document which was incorporated by reference into the Final Mediation Agreement. The master IEP gives plaintiffs most of the relief requested in the August 6, 2003 Request for Due Process Hearing and the August 6, 2003 letter to the District, which specifically described the matters in dispute for the hearing.

   In paragraph number 2 of the Final Mediation Agreement the parties "agree that Tyre was in the 5th grade in the 2003-04 school year" and "agree that

Tyre will receive grades," thus resolving in Tyre's favor the final issues remaining after the January 9, 2004 EIP meeting and the signing of the master IEP.

In paragraph number 3 of the Final Mediation Agreement the parties agreed that the SFUSD would pay $1,000 for the assessment that had been performed by Dr. Kathleen Peters. This resolved in plaintiffs' favor the request for payment made in Ms. Brill's letter of October 8, 2003.

In paragraph number 4 of the Final Mediation Agreement the parties agreed that the Final Settlement Agreement settles all claims raised in the due process request "except for Petitioner's claim for attorney's fees."

In paragraph number 5 of the Final Mediation Agreement the parties agreed that counterpart and fax signatures would be accepted.

33. The Final Mediation agreement was finalized by the Mediator on June 14, 2004 and executed by the parties on June 23, 2004.

34. Tyre and his mother were the prevailing parties in the IDEA Due Process action which began with the Due Process Hearing request on August 6, 2003 and ended with the Final Mediation Agreement on June 23, 2004.

35. The results achieved with respect to each of the nine issues raised in the August 6, 2003 to the District are as follows:

    1st.    **New Talker.** The SFUSD bought Tyre a new talker selected in consultation between Tyre's staff and Ms. Duffin after several trial tests.

    2nd.    **Evaluations.** The requested evaluation of Tyre's "levels of academic performance," "current speech and language" and "placement and equipment needs" were all done.

    3rd.    **Equipment.** The master IEP referenced in paragraph 1 of the Final Mediation Agreement includes a complete list of the equipment Tyre has available to him and that he will have "comparable computer capability at home." The "continuing notes" for the January 9, 2004, portion of the master IEP provides that SFUSD staff will notify Tyre's mother if family owned equipment needs service,

except for Tyre communication device, which SFUSD will handle directly. In addition, the continuing notes provide that if "SFUSD equipment requires maintenance the school/SFUSD staff will contact the tech support department." These provisions satisfies the request that Tyre's equipment requirements be specified in the IEP so that it would be clear what equipment he had a right to have and how it would be serviced and that he was to have use of the equipment at home.

  4th.  **Nursing.**  The master IEP provides that Tyre's nurse shall be in "(<u>close</u> proximity)" to him throughout the school day, which satisfies the plaintiffs' request not to have Tyre's level of nursing services decreased below having him in a nurse's line of sight at all times.

  5th.  **Transportation.**  The master IEP provides for "travel time not to exceed 1 hour each direct. No feeding 45 mins. -1hour prior to traveling" and "nursing throughout school day and during transport (<u>close</u> proximity)." These changes satisfy the request that the IEP be changed to include nursing transportation and reference to special considerations.

  6th.  **Supports for School Personnel.**  The master IEP provides for "para support for mainstreaming; nursing throughout school day" and that "Tyre will be accompanied to general ed class with staff that is familiar with his communications devices," which satisfies the request to change the IEP to clearly indicate that Tyre must be accompanied by staff trained in the use of his communication devices during mainstream activities.

  7th.  **Designated Instructional Services.**  The master IEP referenced in paragraph 1 of the Final Mediation Agreement provides for the specifics regarding amounts of time and times per week for the services plaintiffs wanted, namely that Tyre would receive occupational therapy two times a week for 45 minutes each, oral motor training once a week for 45 minutes and physical therapy two times a week for 45 minutes each.

8th.     **Training and On-Going Communication/Consultation for Nadine Duffin.**  The master IEP provides for "Monthly meetings to include training for Ms. Duffin w/the talker. One or two additional staff visits maybe necessary to insure that he can use his home computer" and the "continuing notes" of the master IEP from the January 9, 2004, IEP meeting state that "an 'in-house' team meeting will be conducted monthly to review Tyre's progress in various areas of his academic achievement. This team will consist of classroom teacher, Mr. Bender, specialist therapis [sic] Ms. Sullivan, Tyre's mother, Ms. Duffin and upon request the AAC specialist, Ms. Haynes." These provisions satisfy plaintiffs request for training for her on the use of Tyre's equipment and for at least monthly meetings with Tyre's SDC teacher, Speech and Language Therapist and Augmentative Communication (AAC) Specialist.

9th.     **Peer Interaction.**  The master IEP "continuing notes" for the January 9, 2004, IEP meeting states that "Tyre will receive structured communication with verbal peers, minimally 3 X/week" and allows him to participate in the "weekly swimming trip with the class." These provisions satisfy plaintiffs request that the IEP be amended to include a clear requirement for Tyre to have regular peer interaction, including with peer communication and mobility partners.

36. The request made in Ms. Brill's October 8, 2003, letter for a "duplicate set of Tyre's assistive learning equipment for his use at home" was resolved by providing Tyre with a "PC computer for Tyre's use at home" with "the necessary software and memory" sufficient to "create compatibility between home and school" as shown by the continuing notes to the Master IEP.

37. In all, plaintiffs had raised 13 issues in need of resolution in the Due Process Hearing procedure consisting of: (1) the nine issues raised in the August 2003 letter to the District, (2) the payment for the Peters assessment and duplicative technology for Tyre's use at home raised in the October 8, 2003 letter from Ms. Brill to the District and (3) the grades

and grade placement issues noted as exceptions when the master IEP was signed. All thirteen of these issues were resolved in favor of the plaintiffs.

38. After the Final Mediation Agreement was signed the SFUSD offered to pay the $1,000 due Dr. Peters and $1,500 for plaintiffs' fees and costs. The offer of $1,000 for Dr. Peters was accepted but the $1,500 attorney fees and costs offer was rejected.

39. On July 9, 2004, Ms. Brill made a demand for $22,455 in attorney fees and $52 in costs for the period commencing with the request for Due Process Hearing on August 6, 2003 and ending on June 23, 2004 with the Final Mediation Agreement. Ms. Brill advised the SFUSD that S. Chandler Visher had been retained to pursue the fee demand. The SFUSD rejected this fee demand through a telephone call to Mr. Visher on August 18, 2004.

40. Additional fees on behalf of plaintiffs have been incurred in connection with efforts to collect the attorney fees.

## FIRST CAUSE OF ACTION

(Attorney fees as permitted by the IDEA)

41. Plaintiffs incorporate by reference paragraphs 1 – 40 hereof as if set forth at length.

42. Plaintiffs filed a formal request for a Due Process Hearing under 20 U.S.C. section 1415(f) on August 6, 2003 regarding issues outstanding with the defendant SFUSD.

43. A mediation session was held on August 29, 2003, pursuant to the IDEA, 20 U.S.C. section 1415(e) and there were conference calls and face-to-face negotiations between the parties thereafter.

44. The IDEA ensures that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living. 20 U.S.C. § 1400(d)(1)(A).

45. The IDEA guarantees parents of disabled children considerable and detailed procedural rights. Parents are entitled to an opportunity to participate in the identification, evaluation, and placement process, including the right to file complaints with respect to any matter relating to the identification, evaluation, or educational placement of

plaintiffs' child, or the provision of a free appropriate public education to such child. 20 U.S.C. sections 1414(f), 1415(b)(1) and 1415(b)(6).

46. Parents who file such complaints are entitled to an impartial Due Process Hearing. 20 U.S.C. section 1415(f)(1). At the Due Process Hearing, the IDEA guarantees parents the right to be accompanied and advised by counsel, as well as the right to present evidence and confront, cross-examine, and compel the attendance of witnesses. 20 U.S.C. § 1415(h).

47. The IDEA provides for attorney's fees: "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B).

48. The Final Mediation Agreement afforded plaintiffs all or substantially all of the relief they sought on the thirteen issues raised in the Due Process Hearing proceeding. Plaintiffs were the prevailing parties in the proceeding commenced by the demand for a Due Process Hearing and are entitled to reasonable attorney fees. Plaintiffs prevailed for purposes of an attorney fee award under IDEA, because a material alteration of the legal relationship occurred when the plaintiffs became entitled to enforce the Final Mediation Agreement against the District. The Final Mediation Agreement materially altered the legal relationship between the parties by modifying the District's behavior in a way that directly benefited the plaintiffs, because the plaintiffs can force the District to do something it otherwise would not have to do.

49. The amount of attorney fees is measured by the "lodestar" method under 20 U.S.C.1415(i)(3), by multiplying each attorney's hourly rate by the number of hours reasonably spent in the representation.

50. Plaintiffs' counsel, Carole Brill, employed an hourly rate of $300, which was reasonable and consistent with prevailing rates charged by other counsel in the area for the same or similar fields of law.

51. The number of hours of work performed by plaintiffs' counsel was reasonable under the circumstances of the case.

52. The type of work performed by plaintiffs' counsel, Carole Brill, was reasonable under the circumstances of the case.

53. Plaintiffs made a demand for a reasonable fee by letter from Ms. Brill on July 9, 2004, for $22,455 in fees plus $52 in costs, for a total of $22,507, for her work between the filing of the Due Process Hearing request and the signing of the Final Mediation Agreement. This demand was rejected by the SFUSD.

### ATTORNEY'S FEES AND EXPENSES

54. In bringing this action, plaintiffs are entitled to an award of reasonable attorney's fees and expenses pursuant to 20 U.S.C. section 1415.

### PRAYER FOR RELIEF

1. That Children's Law Office be awarded reasonable attorney fees, including costs, incurred in the Due Process Hearing process as described herein in the amount of $22,507.

2. That plaintiffs and Children's Law Office be awarded reasonable attorney fees and costs incurred in the process of pursuing their rights to reasonable attorney fees in this proceeding.

3. That the court award plaintiffs such other and further relief as to the court seems proper.

### CERTIFICATION OF INTERESTED ENTITIES OR PERSON

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

DATED: October 26, 2004

Respectfully submitted,
LAW OFFICES OF S. CHANDLER VISHER

By: _____
S. Chandler Visher, Attorney for Plaintiffs